UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JULIUS LEONARD CLAYTON,

        Petitioner,

v.                                                            CASE NO. 09-10083
                                                              HONORABLE ARTHUR J. TARNOW
MICHAEL CURLEY,

        Respondent.

_____/

## OPINION AND ORDER
### (1) GRANTING RESPONDENT'S MOTIONS FOR AN EXTENSION
### OF TIME AND TO DISMISS THE HABEAS PETITION AND
### (2) DENYING PETITIONER'S MOTIONS FOR ENTRY OF A DEFAULT,
### FOR IMMEDIATE RELEASE, AND TO EFFECT SERVICE

This matter is pending before the Court on petitioner Julius Leonard Clayton's habeas corpus petition under 28 U.S.C. § 2254.  The petition challenges Petitioner's Saginaw County convictions for felonious driving and vehicular manslaughter.  Also pending before the Court are respondent Michael Curley's motion for an extension of time to file a responsive pleading, his motion to dismiss the petition, and Petitioner's motions for entry of a default, for immediate release, and to have Respondent serve a copy of his motion to dismiss on him.

Respondent has shown "good cause" for his failure to file a timely responsive pleading.  Fed. R. Civ. P. 6(b)(1).  Therefore, his motion for an extension of time [Dkt. #6] is **GRANTED**, and Petitioner's motion for entry of a default [Dkt. #8] is **DENIED**.  Because Petitioner's habeas claims lack merit, Respondent's motion to dismiss the petition [Dkt. #9] is **GRANTED**, and

Petitioner's motions for immediate release [Dkt. #10 and #14] are **DENIED**. Petitioner's motion to have Respondent effect service of his motion to dismiss on him [Dkt. #12] is **DENIED** as moot, because it is apparent from Petitioner's reply brief that he received a copy of the motion to dismiss.

## I. Background

Petitioner initially was charged in Saginaw County, Michigan with felony murder, two counts of felonious driving, one count of unlawfully driving away a motor vehicle (or, in the alternative, receiving or concealing stolen property worth more than $100), and one count of second-degree retail fraud. The prosecutor later amended the information to include an additional count of manslaughter with a vehicle.

The charges arose from an incident that began at a J.C. Penney's department store on September 16, 1996, at approximately 4:00 p.m. Testimony at the preliminary examination established that Petitioner removed a sweatshirt from a rack in the store and placed it in a bag that he was carrying. Then he went from clerk to clerk trying to obtained a cash refund for the clothing. He was ultimately successful in obtaining a cash refund. He then left the store and drove away in a white car. Security officers at the store had observed Petitioner's conduct in the store and notified the police of the license plate number on the car that Petitioner drove away from the store. A police officer subsequently observed the car and followed it. The officer tried to effect a traffic stop, but the car which Petitioner was driving collided with a car driven by Juan Jesse Sotto. Mr. Sotto's three-year-old grandson, Adam Sotto, was killed in the crash. Also

injured were Mr. Sotto and the passenger in Petitioner's car. Petitioner left the scene of the accident, but a civilian followed him, and the police detained him shortly afterward.

On April 29, 1997, Petitioner pleaded guilty to manslaughter with a vehicle, Mich. Comp. Laws § 750.321, and two counts of felonious driving, Mich. Comp. Laws § 752.191. He also acknowledged being a habitual offender. Petitioner was thirty-five years old at the time, and he stated that he had completed six years of college. In return for Petitioner's plea, the prosecutor dismissed the other counts against Petitioner.

On July 22, 1997, the trial court sentenced Petitioner as a habitual offender to imprisonment for two to three years for each felonious driving conviction and fifteen to twenty-two and a half years for the manslaughter conviction. All the sentences were ordered to run concurrently.

The trial court initially denied Petitioner's motion for appointment of appellate counsel, stating that there were no arguable appellate issues. However, in 2003, Petitioner renewed his request for appointment of appellate counsel, and on November 26, 2003, the trial court granted his motion. Because the time for filing a direct appeal had expired, Petitioner's newly appointed attorney moved for relief from judgment, raising the same claims that Petitioner has presented in his habeas petition. The trial court denied the motion after stating that Petitioner's sentence was appropriate. The Michigan Court of Appeals denied leave to appeal on the ground that Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Clayton*, No. 274270 (Mich. Ct. App. May 14, 2007). On October 29, 2007, the Michigan

Supreme Court denied leave to appeal for the same reason. *See People v. Clayton*, 480 Mich. 922; 740 N.W.2d 279 (2007).

Petitioner filed his habeas corpus petition on January 8, 2009. His claims are: (1) he did not receive any consideration for his plea; (2) trial counsel was ineffective; and (3) he is entitled to re-sentencing. Respondent urges the Court to dismiss the habeas petition for failure to comply with the one-year statute of limitations. Petitioner replies that he diligently pursued his claims and that the statute of limitations should be equitably tolled.

Neither the statute of limitations, nor procedural default, is a jurisdictional bar to consideration of a habeas petition on the merits. *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006) (quoted with approval in *Smith v. Ohio Dep't of Rehabilitation and Corr.*, 463 F.3d 426, 429 n.2 (6th Cir. 2006)). Thus, there is no reason to address the statute of limitations or any procedural default. The Court will proceed to the merits of the petition "in the interest of judicial economy." *Id.*

## II. Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2)      resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
                State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual

determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable." *Id*. at 410-11. Review of Petitioner's first and second

claims is *de novo* because the state courts did not address those claims on their merits, and there

is no state court decision to which this Court can defer under 28 U.S.C. § 2254(d). *Thompson v.

Bell*, 580 F.3d 423, 439 (6th Cir. 2009).

## III. Discussion

### A. Denial of the Motion to Withdraw the Plea

Petitioner alleges that his guilty plea to the manslaughter charge was not knowing and

voluntary and that he should have been permitted to withdraw his plea because he did not receive

any consideration for it. The essence of this claim is that the guilty plea was illusory because the

original charge of felony murder was baseless. Petitioner contends that he could not have been found guilty of felony murder because: (1) he did not commit an underlying felony for purposes of the felony murder statute, and even if he did, the crime was completed when the taking occurred; (2) he did not possess the necessary *mens rea*; (3) a pivotal witness's testimony at the preliminary examination was inherently incredible; and (4) he was not the proximate cause of Adam Sotto's death.

### 1. Legal Framework

The Court begins its analysis by noting that a defendant in a criminal case has no absolute or constitutional right to withdraw a knowing and voluntary guilty plea. *United States v. Williams*, 23 F.3d 629, 634 (2nd Cir. 1994); *Martuzas v. Reynolds*, 983 F. Supp. 87, 90 (N.D. N.Y.1997); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D. N.Y. 1978). It is within the trial court's discretion to permit a defendant to withdraw his plea. *Williams v. Smith*, 454 F. Supp. at 696. Petitioner was fully advised of his rights and of the consequences of his plea. Therefore, he "has stated no basis for permitting him to withdraw his solemn admission of guilt." *Siers v. Ryan*, 773 F.2d 37, 42 (3rd Cir. 1985).

Even if Petitioner has stated a cognizable claim, the Court finds that Petitioner's plea to vehicular manslaughter was not illusory. In Michigan, "the elements of felony murder include (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of specified felonies." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v.*

*Carines*, 460 Mich. 750, 759; 597 N.W.2d 130, 136 (1999)). "Larceny of any kind" is one of the felonies enumerated in the felony murder statute, *see* Mich. Comp. Laws § 750.316(1)(b), and retail fraud is a type of larceny, *People v. Gimotty*, 216 Mich. App. 254, 257-58; 549 N.W.2d 39, 41 (1996). However, obtaining money by false pretenses is not a "larceny of any kind" for purposes of the statute. *People v. Malach*, 202 Mich. App. 266, 269; 507 N.W.2d 834, 836 (1993).

The malice or *mens rea* required to be found guilty of felony murder is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Goecke*, 457 Mich. 442, 464; 579 N.W.2d 868, 878 (1998). Malice "can be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Bulls*, 262 Mich. App. 618, 626; 687 N.W.2d 159, 164-65 (2004) (internal quotation marks and end citations omitted).

## 2. Larceny or False Pretenses

The critical question is whether Petitioner committed a larceny, which is an underlying felony for purposes of the felony murder statute, or whether he obtained money by false pretenses, which is not a predicate felony to the statute. "There are four elements to the crime of false pretenses: (1) a false representation concerning an existing fact, (2) knowledge by the defendant of the falsity of the representation, (3) use of the representation with intent to deceive, and (4) detrimental reliance on the false representation by the victim." *People v. Reigle*, 223 Mich. App. 34, 37-38; 566 N.W.2d 21, 24 (1997). Petitioner was charged with second-degree

retail fraud, which is a larceny. "To convict a person of second-degree retail fraud, the prosecution must establish 1) the defendant took property offered for sale at a store, 2) the defendant physically moved the property, 3) the defendant intended to steal the property, 4) the defendant's actions took place inside a store or in the immediate area while the store was open to the public, and 5) the value of the property was less than $200. MCL 750.356d(2); MCL 750.356d(4)(a)." *People v. Williams*, 2009 WL 2952566, at *3 (Mich. App. Sept. 15, 2009) (unpublished), *appeal denied*, __ Mich. __; 775 N.W.2d 770 (2009).

"It is sometimes difficult to determine in a given case whether the offense is larceny or whether it is a case of false pretenses. . . . In larceny the owner of the thing stolen has no intention to part with his property therein. In false pretenses the owner does intend to part with his property in the thing, but this intention is the result of fraudulent contrivances." *People v. Martin*, 116 Mich. 446, 450; 74 N.W. 653, 654 (1898). In other words, the distinction between a larceny such as retail fraud and obtaining money by false pretenses, "depends entirely upon the intent of the victim: if the owner of the goods intends to keep title but part with possession, the crime is larceny; if the owner intends to part with both title and possession, albeit for the wrong reasons, the crime is false pretenses." *Malach*, 202 Mich. App. at 271; 507 N.W.2d at 837.

There was circumstantial evidence in this case that Petitioner removed a sweatshirt from a store rack, placed it in a bag, and then pretended to return the item to the store for a cash refund. A store clerk testified that she willingly handed $80.56 to Petitioner for a sweatshirt and a pair of jeans that he brought to her. Although she would have preferred to mail a check to Petitioner instead of handing him cash, she noticed security officers in the area. She assumed

from their presence that something was wrong and that Petitioner was trying to acquire money to which he was not entitled. She went along with the ruse. (Tr. Oct. 3, 1996, at 32-41.)

One could infer from Ms. Gregus' testimony that she intended to part with possession, but not title to the money, because she anticipated that the money would be recovered by the security officers. Thus, it is at least arguable that Petitioner committed a larceny and that an underlying felony was committed.

### 3.  Completed Felony

Petitioner claims that, even if an underlying felony was committed, the felony was completed before the collision and, therefore, he should not have been charged with felony murder. "[A] murder committed while attempting to escape from or prevent detection of a felony is felony murder only if the murder is committed as part of a continuous transaction with, or is otherwise immediately connected with, the underlying felony." *Gimotty*, 216 Mich. App. at 258; 549 N.W.2d at 41.

Petitioner sped out of the store's parking lot, was followed by the police, and had not reached a place of temporary safety when Adam Sotto was killed. Therefore, the underlying felony was not completed at the time of the collision. *See id.*, 216 Mich. App. at 258-59; 549 N.W.2d at 41.

### 4.  Malice

Petitioner alleges that he lacked the necessary malice to be found guilty of felony murder. However, the passenger in his car testified that Petitioner was driving fast and erratically. The police officer who followed Petitioner testified that Petitioner disregarded two stop signs and

was still accelerating when he disregarded a third stop sign and collided with Mr. Sotto's car. The officer estimated that Petitioner was traveling sixty to seventy miles per hour at the time.

By disregarding three stop signs in a township where traffic was "pretty heavy" (Tr. Oct. 3, 1996, at 127), Petitioner put in motion a force likely to cause death or great bodily harm. His flight after the collision is further proof of his wanton and willful disregard of the likelihood that the natural tendency of his behavior was to cause death or great bodily harm. The Court therefore concludes that there was sufficient evidence of malice for Petitioner to be found guilty of felony murder.

### 5. The Credibility of Testimony

Petitioner alleges that Daniel Gudschinsky's testimony at the preliminary examination was inherently incredible, because Gudschinsky testified at first that Petitioner appeared to have a gun, but he later said that he did not see a gun. Petitioner also finds Gudschinsky's testimony incredible because he claimed that Petitioner threatened to "waste" him and yet the two of them sat on someone's front porch and talked. Petitioner contends that sitting together and having a conversation belies the fact that Petitioner told Gudschinsky he was going to "waste" him.

The record indicates no inconsistency in Gudschinsky's testimony. Gudschinsky testified that he never saw a gun, but that Petitioner tried "to fake [him] out" by reaching behind his back and saying that he was going to "waste him." Petitioner subsequently attempted to climb a fence in the backyard of a house. He was unable to clear the fence and a dog chased him. Gudschinsky then approached him and told him that the police were coming, that people could identify him, and that it was all over. Petitioner seemed a little disoriented at that point.

Gudschinsky kept talking to him and encouraged him to "come on up here." Petitioner finally walked toward the front of the house and sat on the porch. (Tr. Oct. 3, 1996, at 133-35.) This testimony was not inherently incredible and, thus, there was a rational basis for the trial court's conclusion at sentencing that Petitioner's post-collision behavior was indicative of his state of mind.

### 6. Proximate Cause

There also was evidence that Petitioner was the proximate cause of Adam Sotto's death. Although an investigative officer wrote in his report that Adam probably was not wearing a seat belt and may have been standing in the car, it was the collision that caused the child to be ejected from Mr. Sotto's car and killed. Thus, the causation element was satisfied.

For all the foregoing reasons, the Court finds that the felony murder charge was not baseless. Consequently, Petitioner received consideration for his plea to a vehicular manslaughter by having the felony murder charge and two other charges dismissed. His claim that his plea was involuntary and unknowing does not warrant granting the writ.

### B. Trial Counsel

Petitioner alleges that his trial attorney provided ineffective assistance by: (1) failing to file an interlocutory appeal; (2) misrepresenting to Petitioner that his sentence would not be greater than eight years; (3) failing to argue that Petitioner's reckless driving was not the cause of Adam Sotto's death; (4) failing to advise Petitioner to enter a no- contest plea where it was foreseeable that Petitioner would be named a defendant in a civil lawsuit; and (5) failing to object to numerous sentencing errors.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In guilty plea cases, the "performance" prong requires showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985). The "prejudice" prong requires demonstrating that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. The petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

### 1. Failure to File an Interlocutory Appeal

Petitioner alleges that his trial attorney was ineffective for failing to file an interlocutory appeal after the trial court ruled that the state district judge abused his discretion by dismissing the felony murder charge. Petitioner claims that the Court of Appeals would have ruled in his favor and determined that the facts did not warrant a charge of felony murder.

The felony murder charge was justified. *See supra* Part III.A. Consequently, it is not certain that the Court of Appeals would have ruled in Petitioner's favor. Furthermore, an interlocutory appeal more likely than not would have delayed plea negotiations and resolution of Petitioner's case. Defense counsel therefore was not ineffective for failing to file an interlocutory appeal from the trial court's decision to reinstate the felony murder charge.

### 2. Misrepresenting the Sentence

Petitioner alleges next that his trial attorney misrepresented to him that his sentence would not be greater than eight years. In support of this allegation, Petitioner has submitted his mother's affidavit, which states that defense counsel informed her during a break in the proceedings on April 29, 1997, that Petitioner would serve no more than eight years in prison if he accepted the prosecutor's plea offer. The plea bargain, however, was subsequently explained on the record, and it contained no mention of an agreement regarding the sentence.

Defense counsel, moreover, informed the trial court that he had extensively discussed the matter with Petitioner and conferred with Petitioner's mother. Counsel went on to say that he had explained to Petitioner that he could make no promises regarding the sentence. Petitioner later assured the trial court that no one had promised him anything other than what was stated on the record, and the trial court stated at the conclusion of the proceeding that it had not agreed on a possible sentence with the defendant or the prosecutor or anyone acting in their interest. In light of these facts, the Court finds no merit in the contention that defense counsel misrepresented the probable sentence to Petitioner.

### 3. Failure to Argue Causation

According to Petitioner, his attorney should have argued that Adam Sotto's death was not caused by Petitioner's reckless driving, but by Mr. Sotto's failure to restrain Adam with a seat belt or in a car seat. As explained above, Adam was thrown from Mr. Sotto's vehicle during the collision, and a police officer who investigated the crash opined that Adam was not wearing a safety belt and quite possibly was standing on the seat. Although Mr. Sotto may have been

negligent by not properly restraining Adam, it was Petitioner's failure to stop at the intersection and his collision with Mr. Sotto's car that caused Adam to be ejected from the car and killed. Therefore, defense counsel's failure to argue that Petitioner was not the cause of Adam's death did not amount to deficient performance.

### 4. Failure to Advise Petitioner to Plead No Contest

Petitioner alleges that his attorney should have advised him to plead no contest instead of guilty because it was foreseeable that Adam Sotto's family would sue him. In Michigan, a no-contest plea is legally equivalent to pleading guilty. *See People v. New*, 427 Mich. 482, 493; 398 N.W.2d 358, 363 (1986). However, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). Petitioner stated at the plea proceeding that his plea was freely and voluntarily made, and his trial attorney's failure to advise him to plead no contest does not go to the voluntariness of his plea. The Court therefore concludes that defense counsel's alleged failure to advise Petitioner to plead no contest, as opposed to guilty, did not amount to ineffective assistance.

### 5. Failure to Object to Sentencing Errors

Petitioner's fifth and final claim about his trial attorney is that the attorney failed to object to numerous sentencing errors. The primary basis for this claim is alleged errors in Petitioner's criminal history. The sentencing guidelines, however, were not applicable because Petitioner was charged as a habitual offender. (Tr. July 22, 1997, at 14.) In addition, defense

counsel stated at the sentence proceeding that he and Petitioner did not have any objections to the accuracy of the pre-sentence reports. (*Id*. at 2 and 5.) They chose instead to emphasize the fact that the killing was unintentional. Although the trial court mentioned Petitioner's criminal history when sentencing him, the court also relied on Petitioner's "ruthless actions" and "reckless disregard for anyone who was in his path" on the day in question. (*Id*. at 20-21.) Any errors pertaining to Petitioner's criminal history likely did not prejudice Petitioner.

Petitioner also objects to the description of the current crime in his pre-sentence information report. The report stated that Petitioner drove "a motor vehicle in a negligent, reckless, wilful and wanton manner." This information was supported by testimony at the preliminary examination that Petitioner disregarded stop signs while trying to elude the police. Petitioner himself admitted at the plea proceeding that he recklessly drove a vehicle, which collided with another vehicle and caused the death of a child and injury to the other driver. He admitted to the trial court that he did not stop at three stop signs before the collision and that he was fleeing from the police at the time.

Petitioner has failed to show that numerous errors in the pre-sentence information report had an impact on his sentence. The Court therefore concludes that defense counsel was not ineffective at the sentencing.

In conclusion, defense counsel's performance was not deficient or the alleged deficiencies did not prejudice the defense. Counsel acted reasonably in securing a plea bargain that Petitioner said he was accepting freely and voluntarily. Therefore, Petitioner's ineffective-assistance-of-counsel claim lacks merit.

**C. The Sentence**

The third and final habeas claim alleges that Petitioner is entitled to be re-sentenced because: (1) the prosecutor filed an untimely notice to charge him as a habitual offender; (2) the pre-sentence information report contained inaccurate and incomplete information; (3) his sentence was disproportionate; and (4) the sentence violated the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). The trial court stated on post-conviction review that it thought the sentence was appropriate.

**1. Notice of the Habitual Offender Charge**

Petitioner alleges that he received untimely notice of the prosecutor's intent to charge him as a habitual offender. This claim lacks merit, because

> [a] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The habitual offender notice preceded Petitioner's guilty plea. Under *Henderson*, Petitioner waived his right to object to the timing of the notice when he pleaded guilty and acknowledged that he had been convicted of an offense in the past.

**2. The Pre-Sentence Information Report**

Petitioner alleges next that he was sentenced on the basis of inaccurate and incomplete information. Specifically, Petitioner claims that (1) the presentence information report erroneously stated that he drove "a motor vehicle in a negligent, reckless, wilful and wanton

manner," (2) he was sentenced on the basis of inaccurate information about his prior record, and (3) the trial court failed to ask him whether the presentence information report was accurate.

There was support for the conclusion that Petitioner drove a vehicle negligently and recklessly by driving erratically and disregarding stop signs. He admitted at his plea that he recklessly drove a vehicle.

As for information in the presentence report about Petitioner's prior record, it had little relevance, because Petitioner was sentenced as a habitual offender, not under the state sentencing guidelines. Therefore, even if the information was inaccurate, it did not violate Petitioner's constitutional right to be sentenced on the basis of accurate information. *Cf. Townsend v. Burke*, 334 U.S. 736, 741 (1948) (explaining that the severity of a sentence within the limits set by the statute would not be grounds for relief and that it is not the duration or severity of a sentence that renders it constitutionally invalid; rather, "it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.").

The contention that the trial court failed to ask Petitioner, and not just his attorney, whether the pre-sentence information report was accurate is based on Michigan Court Rule 6.425. "[F]ederal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990), and there is no federal constitutional right to allocution. *Cooey v. Coyle*, 289 F.3d 882, 912 (6th Cir. 2002)) (quoting *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)). The Court therefore

finds no merit in Petitioner's claim that the trial court failed to ask him personally about the accuracy of the pre-sentence report.

### 3. Proportionality of the Sentence

Petitioner alleges that his sentence was not proportionate to the crime or to the offender. A plurality of the Supreme Court, however, has held that "the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). The Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id*. at 1001 (Kennedy, J., concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

The Supreme Court determined in *Harmelin* that life imprisonment without the possibility of parole for possession of more than 650 grams of cocaine was not cruel and unusual punishment. Petitioner, in contrast, was sentenced at the age of thirty-five to a maximum sentence of twenty-two and a half years for causing the death of a three-year-old child. If Harmelin's sentence of life imprisonment without the possibility of parole for a nonviolent crime is constitutional, Petitioner's sentence of fifteen to twenty-two and a half years for the senseless killing of a child is not grossly disproportionate. Petitioner therefore has no right to relief on the basis of his proportionality claim.

### 4. *Apprendi* and *Blakely*

Petitioner's final claim about his sentence alleges that the trial court relied on information which was not proved to a jury beyond a reasonable doubt, nor admitted by Petitioner. This

claim is based on *Apprendi*, 530 U.S. at 466, and *Blakely,* 542 U.S. at 296. The Supreme Court held in *Apprendi* that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The "statutory maximum" for purposes of *Apprendi* "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely,* 542 U.S. at 303 (emphasis omitted). Petitioner's sentence was based on the fact of a prior conviction, and it did not exceed the statutory maximums for the offenses in question. Consequently, his sentence survives Sixth Amendment scrutiny.

## IV. Conclusion

Petitioner's first two claims lack merit, and the state court's rejection of Petitioner's sentencing claim was not contrary to, nor an unreasonable application of, Supreme Court precedent. Accordingly, Respondent's Motion to Dismiss [Dkt. #9] is **GRANTED** on alternative grounds, and the habeas corpus petition [Dkt. #1] is **DISMISSED** with prejudice. Petitioner's motions for entry of a default [Dkt. #8], for service of Respondent's motion [Dkt. #12], and for immediate release from custody [Dkt. #10 and #14] are **DENIED**. Respondent's motion for an extension of time to file its responsive pleading [Dkt. #6] is **GRANTED**.

## V. CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could debate the Court's resolution of Petitioner's first and second claims, but not his third claim.  The Court therefore **GRANTS** a certificate of appealability on the first claim (involuntary plea) and his second claim (ineffective assistance of counsel), but not his third claim (errors in sentencing).  Petitioner may proceed *in forma pauperis* on appeal without further authorization because he was granted *in forma pauperis* status in the District Court.  Fed. R. App. P. 24(a)(3).

S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  March 22, 2010

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on March 22, 2010, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary